**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | |
|---|---|
| ODONCHIMEG KHORLOO and ENKHAMGALAN TSOGTSAIKHAN, Individually and on behalf of other similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> JOHN C. HEATH ATTORNEY AT LAW, PLLC d/b/a LEXINGTON LAW FIRM; PATRICK GIBSON, d/b/a "700life.net"; and Unknown Named Owners of "700life.net", <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)     Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CLASS ACTION COMPLAINT

1.     Plaintiffs Odonchimeg Khorloo and Enkhamgalan Tsogtsaikhan (hereinafter "Plaintiffs"), on behalf of themselves and all other similarly-situated individuals, file this Complaint, jointly and severally, against Defendants John C. Heath Attorney at Law, PLLC dba Lexington Law Firm (hereinafter "Lexington Law"), Patrick Gibson ("Gibson"), registrant of the website 700life.net ("700life"), and any Unknown Owners of the website, for monetary damages and injunctive relief as a result of unsolicited telemarketing text messages placed to their cellular telephones in violation of the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227, *et seq*. and its implementing regulations at 47 C.F.R. § 64.1200, *et seq*., as well as the Illinois Consumer Fraud Act, 815 ILCS § 505/1 *et seq*., the Illinois Automatic Telephone Dialers Act, 815 ILCS § 305/1 *et seq*., and the Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*

*Parties and Jurisdiction*

2.      Plaintiff Odonchimeg Khorloo ("Plaintiff" or "Khorloo") is a natural person, and a resident of the State of Illinois.

3.      Plaintiff Enkhamgalan Tsogtsaikhan ("Plaintiff") or ("Tsogtsaikhan") is a natural person, and a resident of the State of Illinois.

4.      In addition, Plaintiffs are "persons" as defined by 47 U.S.C. § 153(39) and 815 ILCS § 505/1(c).

5.      Lastly, Plaintiffs are "subscribers" as defined by 815 ILCS § 305/5(e).

6.      Defendant Lexington Law is a Utah Limited Liability Company with a registered address of 360 N. Cutler Drive, North Salt Lake, Utah, 84054, that holds itself out as a 'leader in credit repair.'

7.      Defendant Patrick Gibson is the registrant for the website 700life.net, and lists an address of 28150 N. Alma School Rd 103-110 Scottsdale, Arizona, 85262.

8.      Defendant 700life.net is a website that solicits the public online and via text messaging for assistance in, *inter alia,* obtaining loans, and then channels/transfers the phone calls it receives as a result of its solicitation efforts to Lexington Law.

9.      It is unknown at this time whether or not 700life.net is a d/b/a, affiliate, subsidiary, agent or otherwise an alter ego of Defendant Lexington Law, and such information is exclusively in the possession of the Defendants.

10.     Unknown Named Owners are named as Defendants in the event that there are owners or shareholders of 700life.net in addition to Defendants Patrick Gibson or Lexington Law.

11. 700life.net, Patrick Gibson, and the Unknown Named Owners may also be referred to collectively herein as "the 700life.net Defendants."

12. Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

13. Supplemental jurisdiction exists over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, because they are inextricably related to Plaintiffs' TCPA claims as they arise from the same facts and circumstances.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as the acts that give rise to this action occurred, in substantial part, in this district. Venue is also proper in this district because the Defendants transact business in this district.

### *Brief Overview of the Telephone Consumer Protection Act*

15. The Telephone Consumer Protection Act was enacted to prevent companies like the Defendants from invading American citizens' privacy as well as to prevent abusive auto-dialed communications.

16. To that end, the TCPA was designed to protect individual consumers from receiving intrusive and unwanted telephone communications. *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

17. According to the Federal Communications Commission ("FCC"), unwanted calls and texts are the number one cause of complaints made to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robo-calls. The FCC received more than 215,000 TCPA complaints in 2014. See *Re: In the Matter of Rules and Regulations*

*Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, WC

Docket No. 07-135, *Statement of Chairman Wheeler.*

### Factual Allegations Specific to Plaintiff Odonchimeg Khorloo

18.     Between September 20, 2017 and December 15, 2017, Defendants sent ten (10)

unwanted telemarketing text messages to Plaintiff Khorloo's cellular telephone. Upon

information and belief, Defendants and/or their agents utilized an automatic telephone dialing

system ("ATDS"), as that term is defined by 47 U.S.C. § 227(a)(1), to send those messages. See

Exhibit A, *Khorloo Text Messages*.

19.     Upon information and belief, Defendants and/or their agents transmitted text

messages using an autodialer or autodialer system, as that term is defined by 815 ILCS §

305/5(a).

20.     Defendants and/or their agents made their first attempt to contact Plaintiff on

September 20, 2017, by sending a text message from a number displayed as "**409-51**" on

Plaintiff's cellular telephone. The text message stated "**Hi. Get a cash loan now for up to**

**$5000. Approval in minutes.**" Attached to this text message was a website link belonging to

"**700life.net.**"

21.     On September 26, 2017, Plaintiff received a telemarketing text message from

another number, displayed as "**372-57,**" stating "**Start getting credit for your payments like a**

**homeowner! Boost to your credit score by 80 points for paying your rent. Click**" with the

attached link of the website "**700life.net.**

22.     On September 29, 2017, Khorloo was sent another telemarketing text message stating "**Hi. Here's the link for your opportunity to receive a Walmart gift card valued at $1000**" from Defendants and/or their agents from the number again displayed as **"409-51.**" Attached to this text message was the website address "**700life.net.**"

23.     On Oct 7, 2017, Defendants and/or their agents sent another text message stating ""**Hi. Get a cash loan now for up to $5000. Approval in minutes. Reply STOP to end, HELP for help. Msg&Data rates may apply"** from the **"409-51"** number. Attached to this text message was the website link "**700life.net.**"

24.     On Oct 17, 2017, yet another unsolicited telemarketing text message was sent to Plaintiff's cellular telephone by Defendants and/or their agents from the number displayed as "**372-57**": **"Turn lease payments into equity ownership. Search for free. Reply STOP to end, HELP for help. Msg&Data rates may apply.**" Attached to this text message was the website link "**700life.net.**"

25.     On Oct 22, 2017, Plaintiff received another text message from "**409-51**" stating "**Here is your opportunity to receive a Walmart gift for $1000. Reply STOP to end, HELP for help. Msg&Data rates may apply."** Attached to this text message was the website link "**700life.net.**"

26.     On Nov 3, 2017, Defendants and/or their agents again sent a text message from "**409-51**" stating "**Hi. Get a cash loan now for up to $5000. Approval in minutes. Reply STOP to end, HELP for help. Msg&Data rates may apply."** Also attached was the website link "**700life.net.**"

27.     On Nov 17, 2017, Defendants and/or their agents again sent a text message containing the website link "**700life.net**" from the number "**372-57.**"

5

28.     On Nov 24, 2017, Plaintiff received another text message from Defendants and/or their agents containing the website link "**700life.net**" from the number "**409-51.**"

29.     On Dec 15, Plaintiff received another text message from Defendants and/or their agents containing the website link "**700life.net**" from the number "**409-51**".

30.     The telephone numbers used by Defendants and/or their agents to send the at-issue text messages, **409-51** and **372-57**, are short-code telephone numbers used by companies to message consumers *en masse*, and are indicative of the use of an ATDS.

31.     Plaintiff Khorloo did not provide Defendants and/or their agents with the "clear and conspicuous" prior express written consent to send telemarketing text messages to her cellular telephone by means of an automatic telephone dialing system.

32.      Plaintiff was thus intruded on by unwanted telemarketing text messages from 700life offering her a rent-to-own home, cash loans and gift cards.

33.     On information and belief, which Plaintiff verily believes, these communications were in fact a facade or fraudulent practice attempting to obtain Plaintiff's personal information, otherwise known as "phishing."

### *Factual Allegations Specific to Plaintiff Enkhamgalan Tsogtsaikhan*

34.     Between August 26, 2017 and November 16, 2017, Defendants sent eight (8) unwanted telemarketing text messages to Plaintiff Enkhamgalan Tsogtsaikhan's cellular telephone. Upon information and belief Defendants and/or their agents placed calls and unwanted telemarketing messages using an automatic telephone dialing system, as that term is defined by 47 U.S.C. § 227(a)(1).

35.     Upon information and belief Defendants and/or their agents placed the calls using an autodialer or autodialer system, as that term are defined by 815 ILCS § 305/5(a).

*36.*     Defendants made their first attempt to contact Plaintiff Tsogtsaikhan on August 25, 2017, by sending a text message from a number "**409-51**" to Plaintiff's cellular telephone, and all further text messages were sent from this number. The text message stated "**Turn lease payments into equity ownership. Search your neighborhood listings today.**" Attached to this text message was the website link "**700life.net.**"  See Exhibit B, *Tsogtsaikhan Text Messages.*

37.     On Sep 5, 2017, Plaintiff was sent a telemarketing text message stating "**Hi. Get cash loan now for up to $5000. Approval in minutes**". Attached to this text message was the website link "**700life.net**"

38.     On Sep 23, 2017, Defendants sent another text message stating "**Hi. Here's the link for your opportunity to receive a Walmart gift card valued at $1000.**" Attached to this text message was the website link "**700life.net.**"

39.     On Oct 5, 2017, a subsequent unsolicited telemarketing text message was sent to Plaintiff's cellular telephone by Defendants from the same phone number stating as follows: **"Hi. Get a cash loan now for up to $5000. Approval in minutes. Reply STOP to end, HELP for help. Msg&Data rates may apply.**" Attached to this text message was the website link "**700life.net.**"

40.     On Oct 26, 2017, Plaintiff Tsogtsaikhan received another text message stating "**Here is your opportunity to receive a Walmart gift for $1000. Reply STOP to end, HELP for help. Msg&Data rates may apply.**" Attached to this text message was the website address link "**700life.net.**"

41.     On Nov 16, 2017, Plaintiff received another text message from Defendants and/or their agents containing the website link "700life.net."

42.    On Dec 14, 2017 Plaintiff received another text message from Defendants and/or their agents containing the website link "700life.net."

43.    On Jan 11, 2018 Plaintiff received another text message from Defendants and/or their agents containing the website link "700life.net."

44.    Plaintiff Tsogtsaikhan did not provide Defendants and/or their agents with the "clear and conspicuous" prior express written consent to send telemarketing text messages to his cellular telephone by means of an automatic telephone dialing system.

45.    Thus, on information and belief, Plaintiff Tsogtsaikhan, like Plaintiff Khorloo, was a "phishing" target of the Defendants.

### *Lexington Law's ties to 700life.net*

46.    In the course of investigating this matter, Plaintiffs' counsel made a pre-filing inquiry pursuant to the Rules.

47.    According to the WHOIS[1] database, 700life.net is registered to Defendant Patrick Gibson in Scottsdale, Arizona.

48.    The website "700life.net" lists a telephone number, "706-247-7196."

49.    The following statements appear on the website's "home page," http://700life.net/:

## Search and compare mortgage rates

No cost, no obligation, local lenders

---

[1] WHOIS database is an online repository of information associated with registered domain names. It stores and publicly displays domain name information, such as creation and expiration dates, the registrar of record, and its various contacts (registrant, billing, administrative, and technical) https://www.godaddy.com/garage/what-you-need-to-know-about-domain-privacy-and-the-whois-database/

**Free Credit Report Help Yourself**

Keep an eye on your credit scores!

## Loans

Get $500 to $5,000 in your account as soon as tomorrow

## Rental

Turn Lease Payments into Equity Ownership. Search your neighborhood listings today.

## Mortgage Rates

Get today's mortgage rates

## Rental History Pros

Increase your credit score by reporting your rent payments to the credit bureaus with RENT HISTORY PROS!

Welcome to 700life.net, where financial freedom starts! Our goal is to offer a suite of products and services that will help consumers to build good credit and take control of their financial health. *(Last visited 10/20/17).*

Attached hereto as Exhibit C.

50.　　Calls to the 706-247-7196 number are answered by a representative of 700life.net who asks about the types of homes the caller is interested in, whether the caller rented a home, what the caller's credit score was, and if there are any negative items on a caller's credit report.

51.　　At the end of the conversation, the 700life.net representative solicits callers to obtain a "free consultation with one of the credit specialists we work with."

52.　　Calls to 700life.net are then transferred to a representative of Defendant Lexington Law.

53.　　The Lexington Law representative then explains that people who have negative items on their credit report, for example unpaid debt, are transferred to them through 700life.net as well as many other different sources.

9

54. Lexington Law's representatives will state that Lexington receives referrals from 700life and many other different companies offering their credit repair services.

55. Lexington Law's representatives offer to obtain free credit reports for callers as well as the callers' credit scores from Transunion and check to see if there are any issues with the report that would interfere with a caller getting a loan.

56. Lexington Law's representatives will then tell callers that, after finishing their process of credit repair services, they do not refer people back to 700life.net for home loans.

57. The Lexington Law representatives state that they are unaware of any loan procedures of 700life.net.

58. On information and belief, formed in part based on Plaintiffs' counsel's pre-filing inquiry, 700life.net is part of Lexington Law's online affiliate program, and is paid to drive traffic and refer prospective clients to Lexington Law. The online affiliate program is operated through Progexion Marketing, Inc., a supposed third party independent contractor whose website proclaims that they are "the exclusive marketers of Lexington Law." See "Lexington Law Affiliate Terms and Conditions | Progexion" at https://www.progrexion.com/lexington-law-online-affiliate-program/resources/terms-and-conditions, last visited March 1, 2018; attached hereto as Exhibit D.

### COUNT I
### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT,
### 47 U.S.C. § 227(c), ("TCPA")

59. Plaintiffs Khorloo and Tsogtsaikhan hereby incorporate by reference paragraphs 1-58 as if set forth fully in this Count.

60. Plaintiffs bring this action on behalf of a class of similarly-situated persons pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2) and (3) consisting of:

    a.   All persons in the United States;

b. To whose cellular telephones the Defendants and/or their agents sent telemarketing text messages;

c. In the four years prior to the date of filing of this Complaint;

d. Initiated by an automatic telephone dialing system;

e. Where the individual cellular telephone account holders never gave prior express consent to the Defendants to send text messages to their cellular telephones.

61.     The prerequisites under Federal Rule of Civil Procedure 23(a) are thus satisfied.

62.     Upon information and belief, the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). The actual number of class members is in the exclusive control of the Defendants, but is believed to be, at minimum, in the hundreds.

63.     The identity of the class members is ascertainable through records maintained by the Defendants and/or their agents.

64.     There are questions of law and fact common to Plaintiffs Khorloo and Tsogtsaikhan and the proposed class pursuant to Fed. R. Civ. P. 23(a)(2), including but not limited to the following:

a. Whether the Defendants violated the TCPA by transmitting text messages using an ATDS;

b. Whether the Plaintiffs and the Class members are entitled to statutory damages as a result of the Defendants' actions.

65.     Plaintiffs are adequate representatives of the class because their interests do not conflict with those of the class, they will fairly and adequately protect the interest of the class, and they will be represented by counsel skilled and experienced in class actions. Fed. R. Civ. P. 23(a)(4).

66.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for the fair and efficient

adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

67.     Additionally, the Court and the parties would enjoy economies in litigating common issues on a class-wide basis instead of a repetitive, individual basis.

68.     Defendants have acted on grounds that apply generally to the class, namely the transmitting of text messages using an ATDS, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Fed. R. Civ. P. 23(b)(2).

69.      At all times mentioned herein and within the four years prior to the filing of this Complaint, the Defendants and/or their agents transmitted text messages to Plaintiffs Khorloo and Tsogtsaikhan and the Class members on their cellular telephone using an ATDS.

70.     Defendants and/or their agents contacted Plaintiffs and the Class members by means of text messages transmitted to their cellular phones without their consent.

71.     Further, the text messages from Defendants to the Plaintiffs and the Class members were not placed for "emergency purposes" as defined by 47 U.S.C. § 227(b)(1)(A)(i).

72.     As a result, for each text message transmitted in negligent violation of the TCPA, Plaintiffs Khorloo and Tsogtsaikhan and the Class members are entitled to an award of $500.00 in statutory damages pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 C.F.R. § 64.1200(a)(1)(ii).

73.     Additionally, the TCPA expressly authorizes injunctive relief to prevent future violations of the Act. 47 U.S.C. § 227(c)(3)(A).

74.     Accordingly, Plaintiffs also request this Court, on behalf of the Class, for injunctive relief and to order the Defendants to immediately cease engaging in the transmission of text messages in violation of the TCPA.

WHEREFORE, Plaintiffs Khorloo and Tsogtsaikhan request that this Court enter judgment in their favor and against Defendants Lexington Law, Patrick Gibson, 700life.net, and any Unknown Owner of 700life.net, jointly and severally, for the following relief:

    (A)    Certification of the class action with the Plaintiffs as Class representatives under Rule 23 of the Federal Rules of Civil Procedure and undersigned counsel as Class counsel, and designating this Complaint the operable complaint for Class purposes;

    (B)    An order enjoining Defendants and/or their agents from engaging in future communications in violation of the TCPA;

    (C)    Entering judgment that Defendants Lexington Law, Patrick Gibson, 700life.net, and any Unknown Owners of 700life.net violated 47 U.S.C. 227(b)(3);

    (D)    Awarding Plaintiffs and the Class members statutory damages in an amount of $500.00 per each communication in violation of the TCPA, an amount to be determined at trial;

    (E)    Awarding treble damages for each violation determined to be willful and/or knowing under the TCPA, to be determined at trial;

    (F)    Any other relief the Court deems just and appropriate.

## COUNT II: CLASS ACTION FOR
## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT ON BEHALF OF PLAINTIFFS AND A CLASS OF SIMILARLY-SITUATED PERSONS

75.    Plaintiffs Khorloo and Tsogtsaikhan incorporate the preceding paragraphs 1-58 into this count.

76.    Plaintiffs bring this action on behalf of a Class under the Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (3), and propose a Sub-Class of the Class previously defined in Count I of this Complaint consisting exclusively of Illinois residents, and extending for a period of 3 years prior to the filing of this Complaint.

77. Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/2, ("ICFA"), prohibits, *inter alia*, deceptive and unfair conduct, including but not limited to, false representations, false statements and omissions. Section 2 provides that:

> **Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact**, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965 [815 ILCS 510/2], in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act [15 U.S.C. § 45]. (Emphasis added).

78. Under the ICFA, an unfair act or practice is one that (a) offends public policy; (b) is immoral, unethical, oppressive or unscrupulous; or (c) causes substantial injury to consumers.

79. Defendants engaged in a pattern and practice of repetitively sending text messages to cellular telephones without prior express consent.

80. Such conduct is immoral, oppressive and unscrupulous, and violates Illinois public policy, because repetitively sending text messages in an attempt to contact individuals without first obtaining their consent violates their privacy rights, intrudes upon their seclusion, and constitutes harassing conduct.

81. By way of example, Defendants' conduct as described herein is unfair, unethical, oppressive and unscrupulous, and violates Illinois public policy as set forth in the Telephone Consumer Protection Act and the Illinois Automatic Telephone Dialers Act, 815 ILCS 305 et seq. and 815 ILCS 305/30(b).

82. Defendants' conduct described herein occurred during the course of Illinois trade and commerce.

14

WHEREFORE, Plaintiffs Khorloo and Tsogtsaikhan respectfully request that the Court enter judgment in favor of themselves and a class of similarly-situated Illinois residents and against Defendants, jointly and severally, and award damages as follows:

a) Actual damages in an amount to be proven at trial;

b) Punitive damages pursuant to 815 ILCS § 505/10a;

c) Attorney's fees, expenses, and costs incurred;

d) Any other relief this Court deems just and proper.

## COUNT III: CLASS ACTION FOR
## VIOLATIONS OF THE ILLINOIS AUTOMATIC TELEPHONE DIALERS ACT
## ON BEHALF OF PLAINTIFFS AND A CLASS OF SIMILARLY- SITUATED PERSONS

83.    Plaintiffs Khorloo and Tsogtsaikhan incorporate the preceding paragraphs 1-58 into this count.

84.    Plaintiffs bring this action on behalf of a class under Federal Rules of Civil Procedure 23(a) and 23(b)(2) and (3), and proposes the same class as defined in Count II of this complaint.

85.    Defendants' violated the provisions of the Illinois Automatic Telephone Dialers Act by transmitting text messages as set forth above and as a result the Plaintiffs and the members of the class have been damaged and may bring an action for the recovery of damages.

86.    The Plaintiffs and the members of the class are thus entitled to judgment for three (3) times the amount at which the actual damages are assessed, plus costs and reasonable attorney fees. 815 ILCS §305/30(c).

87.    In addition to the damages authorized under subsection (c), the Plaintiffs and members of the class are entitled to statutory damages in the amount of $500 per violation.  815 ILCS §305/30(c-5).

WHEREFORE, Plaintiffs Khorloo and Tsogtsaikhan respectfully request that the Court enter judgment in favor of themselves and a class of similarly-situated Illinois residents and against Defendants, jointly and severally, and award damages as follows:

a) Trebled actual damages;

b) Statutory damages in the amount of $500 per violation;

c) Attorney's fees, expenses, and costs incurred;

d) Any other relief this Court deems just and proper.

**COUNT IV: CLASS ACTION FOR**
**ENUMERATED VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD ACT**
**ON BEHALF OF PLAINTIFFS AND A CLASS OF SIMILARLY- SITUATED**
**PERSONS**

88.     Plaintiffs Khorloo and Tsogtsaikhan incorporate the preceding paragraphs 1-58 into this count.

89.     Plaintiffs bring this action on behalf of a class of similarly-situated persons pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2) and (3) consisting of:

a.   All persons in the State of Illinois;

b.   Who received text messages from Defendants offering any free prize, gift, or gratuity;

c.   Wherein all material terms and conditions relating to the offer were not clearly and conspicuously disclosed;

d.   In the four years prior to the date of filing of this Complaint;

90.     As an example, as described above, a free prize, gift, or gratuity would include, but not be limited to, "a Walmart gift card for $1000."

91. By its conduct as described herein, Defendants violated Section 505/2P of the Illinois Consumer Fraud Act by promoting their business by means of falsely offering free prizes and/or gifts. 815 ILCS § 505/2P.

92. Each unconsented-to text message constitutes a separate violation of the Act.

93. Defendant Lexington Law accomplished its misleading promotion of its credit repair business by utilizing the participation of the 700life.net Defendants. Defendants offered free prizes, gifts or gratuities, which are prohibited as follows:

> **§ 2P. Offers of free prizes, gifts, or gratuities; disclosure of conditions. It is an unlawful practice for any person to promote or advertise any business, product, utility service, including but not limited to, the provision of electric, telecommunication, or gas service, or interest in property, by means of offering free prizes, gifts, or gratuities to any consumer, unless all material terms and conditions relating to the offer are clearly and conspicuously disclosed at the outset of the offer so as to leave no reasonable probability that the offering might be misunderstood.**

94. At no time did Defendants clearly and conspicuously disclose the material terms and conditions related to its offers promoted through its telecommunications with the Plaintiff.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in favor of themselves and a class of similarly-situated Illinois residents and against Defendants, jointly and severally, and award damages as follows:

e) Actual damages, in an amount to be proved at trial;

f) Attorney's fees, expenses, and costs incurred;

g) Any other relief this Court deems just and proper.

### COUNT V: CLASS ACTION FOR VIOLATIONS OF THE UNIFORM DECEPTIVE TRADE PRACTICES ACT ON BEHALF OF PLAINTIFF KHORLOO AND A CLASS OF SIMILARLY-SITUATED PERSONS

95.     Plaintiffs Khorloo and Tsogtsaikhan hereby incorporate by reference paragraphs 1-58 as if set forth fully in this Count.

96.     By its conduct as described herein, Defendants committed violations of the Uniform Deceptive Trade Practices Acts of Several States.

97.     The Uniform Deceptive Trade Practices Acts prohibits certain conduct in the course of business, vocation, or occupation.

98.     To use the Illinois version, found at 815 ILCS § 510/1 *et seq.,* a person violates the Uniform Deceptive Trade Practices Act, when that person:

> (1) passes off goods or services as those of another;
>
> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
>
> (3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;
>
> ***
>
> (5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;
>
> ***
>
> (9) advertises goods or services with intent not to sell them as advertised;
>
> ***
>
> (12) engages in any other conduct which similarly creates a likelihood of confusion or misunderstanding.
>
> *See* 815 ILCS § 510/2(a)(1-3), (5), (9), (12).

99.     Lexington Law employed, or otherwise utilized the 700life.net internet site as a "phishing" ruse to obtain business in violation of all of the above provisions of the Uniform Deceptive Trade Practices Acts.

100.    700life.net's only purpose is to steer traffic to Lexington Law's credit "repair" business; as such, it passes off Lexington Law's services as its own, in violation of subsection (1).

101.    700life.net's undisclosed affiliation, connection, and association with Lexington Law causes a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of Lexington Law's services, in violation of subsection (2).

102.    700life.net's refusal to disclose its affiliation, connection, and association with Lexington Law causes a likelihood of confusion or misunderstanding by consumers of its sole purpose as an artifice to divert business to Lexington Law's credit "repair" business in violation of subsection (3).

103.    700life.net represents that its services have sponsorship, approval, characteristics, uses, or benefits that they do not have: consumers calling 700life.net are uniformly transferred though to Lexington Law and are not connected with "local lenders"; do not get loans "as soon as tomorrow"; do not "turn lease payments into equity ownership"; and do not "increase [their] credit score by reporting [their] rent payments to the credit bureaus with RENT PROS" through any interaction with 700life.net, in violation of subsection (5).

104.    Additionally, 700life.net holds itself out to unsuspecting consumers as a loan broker, i.e., connected with "local lenders" and helping consumers get loans "as soon as tomorrow"; as well as a financial advisor, advising consumers on how to "turn lease payments into equity ownership"; and, lastly, sets up yet another ruse, a non-entity referred to as "RENT

PROS", and thus advertises services with intent not to sell them as advertised, in violation of subsection (9).

105.    As consumers calling 700life.net are uniformly transferred though to Lexington Law and do not receive any of the services promised on 700life.net's website, 700life.net's operation, when viewed in its totality, violates the catchall provision of subsection (12), engaging "in any other conduct which similarly creates a likelihood of confusion or misunderstanding."

106.    In order to prevail in an action under the Uniform Deceptive Trade Practices Acts, a plaintiff need not prove competition between the parties or actual confusion or misunderstanding.

107.    Plaintiffs and the class members are likely to be damaged by these deceptive trade practices, as Defendants, having already captured valuable personal, biographical, demographic, and geographic data from their contacts with the Plaintiffs and the Class, will put such data to use unless and until they are enjoined from doing so.

108.    Plaintiffs bring this action on behalf of a class of similarly-situated persons pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(2) and (3) consisting of:

      a.   All persons in the United States;

      b.   Covered by any one of the following Uniform Deceptive Trade Practices Acts:

Ala. Code § 8-19-5(27); Alaska Stat. § 45.50.471(a); Ariz. Rev. Stat. § 44-1522; Ark. Code § 4-88-107(a), (a)(10); Cal. Bus. & Prof. Code § 17200; Colo. Rev. Stat. § 6-1-110(a); Conn. Gen. Stat.§ 42-110b(a); D.C. Code § 28-3904(e); Del. Code Ann. tit. 6, § 2513(a); Fla. Stat. Ann. §§ 501.204; Ga. Code § 10-1-393(a); Haw. Rev. Stat. § 480-2(A); Idaho Code § 48-603(17); ILCS 815 §510 *et seq*.; Ind. Code § 24-5-0.5-10 ; Kan. Stat. § 50-626(a) & 627; Ky. Rev. Stat. § 367.170; La. Stat. Ann. § 51:1405(A); Me. Rev. Stat. Ann. tit. 5 § 207; Md. Code Comm. Law § 13-301(1), (3); §13-303; Mass. Gen. Laws Ch. 93A, § 2(a); Mich. Comp. Laws Ann. §445.903(1)(s), (x), (z), (bb), (cc); Minn. Stat. § 325F.69(1); Mo. Rev. Stat. § 407.020(1); Mont. Code § 30-14-103; Neb. Rev. Stat. § 59-1602; Nev. Rev. Stat. § 598.0915(15)

& 598.0923(2), (3); N.H. Rev. Stat. § 358-A:2; N.J. Stat. Ann. § 56:8-2; N.M. Stat. Ann. §§ 57-12-2(E),

57-12-3; N.Y. Gen. Bus. Law §§ 349(a), 350-a(1); N.C. Gen. Stat. § 75-1.1(a); N.D. Century Code §§ 51-

15-02, 51-15-02.3; Ohio Rev. Code §§ 1345.02, 1345.03, 1345.031; Okla. Stat. Ann. tit. 15, §§ 753,

752(13) & (14); Or. Rev. Stat. § 646.607(1); 73 Pa. Stat. § 201-3 & 201-2(4); R.I. Gen. Laws §§ 6-13.1-

1(6)(xii), (xiii), (xiv), 6-13.1-2; S.C. Code § 39-5-20(a); S.D. Codified Laws § 37-24-6(1); Tenn. Code §

47-18-104(a); Tex. Bus. & Com. Code §§ 17.45(5), 17.50(a)(3); Utah Code Ann. §§ 13-11-4(1) & 13-11-

5; Vt. Stat. Ann. tit. 9, § 2453(a); Va. Code Ann. § 59.1-200(A)(14); Wash. Rev. Code § 19.86.020; W.

Va. Code §§ 46A-6-102(7), 46A-6-104; Wis. Stat. Ann. §§ 100.20(1) & 100.18(1); Wyo. Stat. Ann. § 40-

12-105(a)(xv);

    c.   Who called the telephone number 706-247-7196 or any other number assigned to 700life.net, including but not limited to 888-401-2552;

    d.   In the three years prior to the date of filing of this Complaint;

    e.   Who spoke to a 700life.net representative; and

    f.   Who were subsequently transferred to a Lexington Law firm representative.

109.    The prerequisites under Federal Rule of Civil Procedure 23(a) are thus satisfied.

110.    Upon information and belief, the class is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). The actual number of class members is in the exclusive control of the Defendants, but is believed to be in the hundreds.

111.    The identity of the class members is ascertainable through records maintained by the Defendants and/or their agents.

112.    There are questions of law and fact common to Plaintiffs and the proposed class pursuant to Fed. R. Civ. P. 23(a)(2), including but not limited to the following:

    a.   Whether the Defendants violated the Uniform Deceptive Trade Practices Acts;

    b.   Whether the Plaintiffs and the Class members are entitled to injunctive relief.

113.    Plaintiffs are adequate representatives of the class because their interests do not conflict with those of the class, they will fairly and adequately protect the interest of the class,

and they will be represented by counsel skilled and experienced in class actions. Fed. R. Civ. P. 23(a)(4).

114.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

115.     Additionally, the Court and the parties would enjoy economies in litigating common issues on a class-wide basis instead of a repetitive, individual basis.

116.     Defendants have acted on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. Fed. R. Civ. P. 23(b)(2).

117.     Additionally, the Uniform Deceptive Trade Practices Acts expressly authorize injunctive relief to prevent future violations of the Act(s).

118.     Accordingly, Plaintiffs request this Court, on behalf of the Class, for injunctive relief and to order the Defendants to immediately cease displaying the deceptive and misleading statements on 700life.net concerning 700life.net's offering of services or sponsorship, approval, characteristics, uses, or benefits related to mortgage lending, loan approvals, local lenders, lease payments, equity ownership, or the fictitious entity, RENT PROS.

119.     Plaintiffs also request this Court, on behalf of the Class, for an Order enjoining Defendants to cease and desist from concealing, and mandating the disclosure of, 700life.net's affiliation, connection, and association with Lexington Law on the 700life.net website, as well as any website operated by the Defendants to forward business to Lexington Law.

120.     Lastly, Plaintiffs request this Court, on behalf of the Class, for an Order enjoining Defendants to delete all personal information collected from Class Members as part of Defendants unlawful "phishing" ruse.

WHEREFORE, Plaintiffs Khorloo and Tsogtsaikhan request that this Court enter judgment in their favor and against Defendants Lexington Law, Patrick Gibson, 700life.net, and any Unknown Owner of 700life.net, jointly and severally, for the following relief:

(G)     Certification of the class action with the Plaintiffs as Class representative under Rule 23 of the Federal Rules of Civil Procedure and undersigned counsel as Class counsel, and designating this Complaint the operable complaint for Class purposes;

(H)     An order enjoining Defendants and/or their agents from engaging in future communications in violation of the Uniform Deceptive Trade Practices Acts;

(I)     Attorneys' fees and costs;

(J)     Any other relief the Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs demand a trial by jury in this action.

## DOCUMENT PRESERVATION DEMAND

Plaintiffs hereby demand that all Defendants take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to either or both Plaintiffs, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with Plaintiffs, and any account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiffs

demand that such Defendant requests that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of any Defendant.

Respectfully submitted,

By: /s/ Lance A. Raphael
One of Plaintiffs' Attorneys

Lance A. Raphael
Craig R. Frisch
The Consumer Advocacy Center, P.C.
180 West Washington Street, Suite 700
Chicago, IL 60602
(312) 782-5808
Email: lance@caclawyers.com
Email: craig@caclawyers.com

Christopher Kruger
KRUGER & GRUBER, LLP
500 N. Michigan Ave., Suite 600
Chicago, IL 60611
Phone: 773-663-4949
Fax: 312-268-7064
Email: chris@krugerandgruber.com