**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ODONCHIMEG KHORLOO and<br>ENKHAMGALAN TSOGTSAIKHAN,<br>individually and on behalf of others<br>similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JOHN C. HEATH ATTORNEY AT LAW,<br>PLLC d/b/a LEXINGTON LAW FIRM, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 18-cv-01778<br><br>Judge Andrea R. Wood |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs Odonchimeg Khorloo and Enkhamgalan Tsogtsaikhan received a series of unsolicited text messages offering them cash loans, Walmart gift cards, and other services. They then brought this putative class action against Defendant John C. Heath Attorney at Law, PLLC, doing business as Lexington Law Firm ("Lexington"), and Defendant Patrick Gibson, doing business as 700life.net ("Gibson"), seeking to hold them responsible. Specifically, Plaintiffs allege that Lexington and Gibson violated the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and Illinois state law by sending, or authorizing the sending of, the text messages. The Court previously entered judgment by default as to Gibson. (Dkt. No. 86.) Now, Lexington has moved for summary judgment on the claims against it, arguing that Plaintiffs have failed to come forward with evidence to support the claims against it. (Dkt. No. 45.) In addition to their submission in opposition to summary judgment, Plaintiffs also have filed a motion to amend or

"supplement" their complaint. (Dkt. No. 92.) For the reasons stated below, the Court denies

Plaintiffs' motion to amend the complaint and grants Lexington's motion for summary judgment.[1]

## BACKGROUND

For purposes of the present motions, the Court sets out the relevant facts as favorably to

Plaintiffs, as the nonmovants, as the record and Local Rule 56.1 permit. *See Johnson v. Advocate*

*Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018). In so doing, the Court notes that

Lexington challenges the additional facts submitted by Plaintiffs, contending that those facts are

based on inadmissible evidence and contain inadmissible hearsay. But while Federal Rule of Civil

Procedure 56 allows a party to object that "the material cited to support or dispute a fact cannot be

presented in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2), at the

summary judgment stage, parties do not need to show that evidence is actually admissible but only

that it could be presented in an admissible form. *See Cehovic-Dixneuf v. Wong*, 895 F.3d 927, 931

(7th Cir. 2018). For example, Lexington objects that Plaintiffs rely on information from various

websites that have not been authenticated. (Def.' Resp. to Pls.' Statement of Additional Material

Facts ("DRSOMF") ¶¶ 2–4, 6–17, Dkt. No. 95.) It is true that Plaintiffs have not yet authenticated

this evidence. *See* Fed. R. Evid. 901(a). But there is no reason to believe that Plaintiffs could not

authenticate the documents at trial by presenting testimony from a person with personal

knowledge, presenting expert testimony, or pointing to the webpages' distinctive characteristics.

*See, e.g.*, *U.S. SEC v. Berrettini*, No. 10-cv-1614, 2015 WL 5159746, at *6 (N.D. Ill. Sept. 1,

2015) (describing common methods for authenticating webpages).

Lexington also argues that the content of Plaintiffs' cited webpages (discussed in more

detail below) constitutes inadmissible hearsay. Subject to certain exceptions, out-of-court

---

[1] Although the complaint is styled as a putative class action, Plaintiffs have not moved for class certification.

statements offered to prove the truth of the matter asserted are not admissible. *See* Fed. R. Evid. 801–802. At least some of the material cited by Plaintiffs is plainly hearsay; for example, they cite an anonymous online complaint discussing Lexington on the website "Ripoff Report," which is plainly being offered for the truth of the matter asserted. (DRSOMF ¶ 10.) Similarly, Plaintiffs offer only a citation to a previously-filed brief to establish the definition of "IP address," which is relevant to their claims. (*Id.* ¶ 5.) But the Court declines to rule piecemeal on the admissibility of Plaintiffs' evidence because, even assuming all of Plaintiffs' evidence is admissible, the record does not establish a genuine issue of material fact.[2] So for purposes of Lexington's motion for summary judgment, the Court treats Plaintiffs' cited evidence as admissible.

As set forth in the parties submissions, Khorloo and Tsogtsaikhan are both Illinois residents. (Pls.' Resp. to Def.'s Statement of Material Facts ("PRSOMF") ¶¶ 1–2, Dkt. No. 94.) Lexington is a Utah-based law firm that provides credit-repair services. (*Id.* ¶ 3.) And Gibson's website, 700life.net, advertises loans and rent-to-own opportunities to the public on the internet and by text message. (*Id.* ¶ 4.)

700life.net, or someone acting on its behalf, sent ten text messages to Khorloo from September 26, 2017 to December 15, 2017, advertising loans, gift cards, and services to increase Khorloo's credit score.[3] (*Id.* ¶¶ 8–16, 25–26.) A link to 700life.net's website accompanied each text message. (*Id.*) Tsogtsaikhan received eight similar text messages, also sent by 700life.net or its agent, from August 25, 2017 to January 11, 2018. (*Id.* ¶¶ 17–24.) Lexington has never had a

---

[2] At least some of Plaintiffs' proffered evidence appears to be admissible. For example, they offer audio recordings of calls made to the phone number provided in the text messages in which agents transferred the caller to third parties who identified themselves as representing Lexington. (DRSOMF ¶ 18.) Because statements made by an opposing party's agent or employee within the scope of that relationship are not hearsay, these recordings may be admissible. Fed. R. Evid. 801(d)(2)(D).

[3] Lexington contends Khorloo only received nine text messages. (*See* PRSOMF ¶ 26.) But the record contains screenshots of ten text messages that Khorloo received. (*See* Compl., Ex. A, Screenshots of Text Messages, Dkt. No. 2-1.)

marketing partnership or contractual relationship with 700life.net. (*Id.* ¶¶ 27–28.) While Lexington has contracted with Progrexion Marketing, Inc. ("Progrexion") for marketing services, Progrexion also has never had a contractual or marketing relationship with 700life.net. (*Id.* ¶¶ 29–30.) Neither Khorloo nor Tsogtsaikhan ever had direct contact or conducted any business with Lexington. (*Id.* ¶¶ 31–32, 34–35.)

Gibson is the registered owner of 700life.net, and his LinkedIn page states that he is the founder and CEO of a company called Cervont. (DRSOMF ¶ 2.) Cervont's website portrays Lexington as a client. (*Id.* ¶ 3.) An internet service provider operated by Amazon hosts 700life.net and various websites associated with Cervont. (*Id.* ¶ 4.) These websites attempted to hide information about the true identity of their operators by listing their name and organization as "Domain Privacy Service FBO Registrant." (*Id.* ¶ 6.)

Gibson is implicated in several telemarketing schemes involving Lexington. An anonymous complaint on RipoffReport.com describes Gibson as operating a telemarking scam in which agents first offer help with auto financing and then forward potential customers to Lexington, which does not offer loans but instead sells credit repair services. (*Id.* ¶ 10.) Comments on websites including workersonboard.com, indeed.com, and Realwaystoearnmoneyonline.com indicate that Gibson used various entities to hire telemarketers to refer clients to Lexington in a bait-and-switch scheme. (*Id.* ¶ 11; Decl. of Craig Rein Frisch Pursuant to Fed. R. Civ. P. 56(d) ("Frisch Decl.") ¶¶ 23–29, Dkt. No. 60.) User comments on the website 800notes.com suggest that 700life.net shares a telemarketing phone number with a third party ("Lending Tree") that similarly transfers customers to Lexington. (DRSOMF ¶ 7.)

Plaintiffs contend that Cervont, Progrexion (with which Lexington admits having a marketing relationship) and Lexington are associated in other ways. Cervont and Progrexion were

both listed as attending Affiliate Summit West, a convention that was scheduled for February 2021. (*Id.* ¶ 12.) The website FreeScoreConnect states that visitors consent to receive text messages and autodialed marketing calls from advertisers including Cervont, Progrexion, and Lexington. (*Id.* ¶ 13.) Cervont, Progrexion, and Lexington are listed as partners by The Wisdom Companies, Fast5kLoans, and several other websites. (*Id.* ¶¶ 14–15, 17.) They are also listed as advertisers by "Home Ownership Group." (*Id.* ¶ 16.)

Plaintiffs' counsel called the phone number in the text messages that Plaintiffs received, recording two conversations.[4] In Plaintiffs' description, the calls were answered by an agent who transferred the call to another agent purporting to represent Lexington, who attempted to "solicit the caller for Lexington's services." (*Id.* ¶ 18.)

## DISCUSSION

### I.    Plaintiffs' Motion to Amend or Supplement the Complaint

After Lexington moved for summary judgment, Plaintiffs asked the Court to defer consideration of Lexington's motion. (Frisch Decl. ¶ 31.) The Court denied this request. (Mem. Op. & Order, Dkt. No. 85.) Plaintiffs subsequently filed a motion for leave to amend or supplement their complaint. (Dkt. No. 92.) Although they did not attached a proposed amended or supplemental complaint to their motion, the Court discerns that Plaintiffs seek to add allegations to this case that would draw a connection between Gibson, Cervont, and Lexington. Specifically, Plaintiffs' new pleading would allege that Gibson, through his corporation Cervont, acted as Lexington's agent in sending marketing text messages to Plaintiffs. The Court surmises that Plaintiffs realized after receipt of Lexington's summary judgment motion that the basis for

---

[4] While Plaintiffs disclosed recordings of the two calls in their initial disclosures to Lexington, Plaintiffs did not submit those recordings to the Court along with their summary judgment opposition, and so the Court has not heard them. (*See* DRSOMF ¶ 18.) For purposes of this motion, the Court relies on Plaintiffs' description of the calls.

Lexington's alleged liability was lacking and thus seek to remedy that deficiency. However, it is too late for them to do so.

Plaintiffs first invoke Federal Rule of Civil Procedure 15(d), under which the Court may allow a party to file a supplemental pleading setting out "any transaction, occurrence, or event that happened after the date of the pleadings to be supplemented." But Plaintiffs have not proposed a supplement addressing events that "happened *after* the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d) (emphasis added). Instead, the facts Plaintiffs would add—alleging a business relationship between Gibson, Cervont, and Lexington in which Gibson sent text messages to Plaintiffs on Lexington's behalf—would have necessarily occurred before Plaintiffs filed their complaint (and contemporaneously with the events already alleged therein). Plaintiffs claim that they only became aware of the connections between Gibson, Cervont, and Lexington after they filed their Complaint. Rule 15(d), however, concerns when the events underlying a plaintiff's proposed supplemental pleading occurred, not when the plaintiff became aware of those events. Thus, the Court denies Plaintiffs leave to file a supplemental pleading under Rule 15(d).

Plaintiffs also seek leave to amend their complaint under Federal Rule of Civil Procedure 15(c)(1)(C), which allows the Court to permit amendments to "change[] the party or the naming of the party against whom a claim is asserted" under certain circumstances. Specifically, Plaintiffs seek to change Gibson's name from "Patrick Gibson, d/b/a '700life.net'" to "Patrick Gibson, d/b/a 'Cervont' and related entities." The Court should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, the Court may deny leave to amend "on the grounds of undue delay, bad faith, dilatory motive, prejudice, or futility." *Guise v. BWM Mortg., LLC*, 377 F.3d 795, 801 (7th Cir. 2004).

Here, Plaintiffs have unduly delayed in seeking amendment. Based on the information provided by Plaintiffs' counsel in his affidavit, Plaintiffs were aware of connections between Gibson, Cervont, and Lexington at least as far back as April 4, 2019, shortly after Lexington moved for summary judgment and more than thirteen months before Plaintiffs moved to amend. (Frisch Decl. ¶¶ 4, 13, 20.) Plaintiffs have offered no adequate reason for delaying thirteen months to substitute parties. Moreover, Plaintiffs have already sought and obtained a default judgment as to Gibson and so it is unclear how Plaintiffs may change Gibson's name in a manner that may alter the basis for his liability. Further, as discussed below, changing Gibson's name to state that he does business as Cervont would not change the outcome in this case and thus the amendment would be futile. Finally, the Court notes that Plaintiffs only sought leave to amend after the Court denied their motion to defer consideration of Lexington's motion for summary judgment, in what appears to be an effort to resuscitate a faltering case. The Court finds that it is not in the interests of justice to allow Plaintiffs to amend their complaint at the late stage in the proceeding, and denies the motion.

## II.     Lexington's Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the admissible evidence considered as a whole shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, even after all reasonable inferences are drawn in the non-movant's favor. *Dynegy Mktg. & Trade v. Multiut Corp.*, 648 F.3d 506, 517 (7th Cir. 2011). However, a factual dispute will defeat a motion for summary judgment only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Lawrence v. Kenosha County*, 391 F.3d 837, 842 (7th Cir. 2004) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "mere existence of **some** alleged factual dispute" is not enough to defeat summary judgment. *Id.*

### A.    Telephone Consumer Protection Act (Count I)

The TCPA forbids the use of automatic telephone dialing systems ("autodialers") to make calls, with certain exceptions not relevant here. 47 U.S.C. § 227(b)(1)(A)(iii). A text message sent to a cell phone is considered a "call" under the TCPA. *See Blow v. Bijora, Inc.*, 855 F.3d 793, 798 (7th Cir. 2017) (citing *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 667 (2016)). In Count I, Plaintiffs contend that Lexington violated the TCPA by sending them text messages through an agent; they do not claim that Lexington directly sent the messages. Thus, Lexington may be held responsible for the messages if the actual sender had "express or apparent authority" from Lexington to send them. *See Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 357 (7th Cir. 2020). Apparent authority arises when "a third-party reasonably relies on the principal's manifestation of the authority to an agent," while express authority exists "when a principal expressly authorizes an agent and the agent acts on the principal's behalf and subject to the principal's control." *Id.*

There is no issue of third-party reliance here, as the record does not indicate that Lexington suggested to Plaintiffs (or anyone else) that Gibson or 700life.net acted as its agent. Plaintiffs instead pursue an express authority theory, relying on various webpages to derive an inference of some business relationship between Lexington and Cervont (and, by extension, 700life.net). At most, Plaintiffs' evidence tends to show that Gibson operated various telemarketing schemes pushing potential clients to Lexington. But the record establishes only an indirect connection between Gibson and Lexington. There is no evidence that Gibson or 700life.net dealt directly with Lexington in any way, let alone that Lexington ever authorized Gibson or 700life.net to send text messages on its behalf. Likewise, while the recorded phone

calls indicate some connection (direct or indirect) between Lexington and Gibson or 700life.net, the calls do not create a genuine issue of material fact regarding an agency relationship. A reasonable jury could not conclude, without more, that 700life.net or Gibson were authorized to send marketing text messages on Lexington's behalf.

Likewise, Plaintiffs have not established that the text messages were sent using an autodialer. For equipment to qualify as an autodialer, it must be able to "store or produce telephone numbers to be called, using a random or sequential number generator" and to dial those numbers. 47 U.S.C. § 227(a)(1). To survive summary judgment, Plaintiffs must provide some proof that an autodialer was used. *See Messina v. Green Tree Servicing, LLC*, 210 F. Supp. 3d 992, 1003 (N.D. Ill. 2016). Yet Plaintiffs have not argued that such evidence can be found anywhere in the record; without proof, they cannot prevail.[5]

The Court thus grants summary judgment to Lexington on Count I.

### B. State-Law Claims

Plaintiffs also assert four state-law claims: Count III asserts a claim pursuant to the Illinois Automatic Telephone Dialers Act, 815 ILCS 305/30 ("IATDA"); Counts II and IV assert claims pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/2, 505/2P, and Count V asserts a claim pursuant to the Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/2.

---

[5] Plaintiffs, citing no authority, attempt to rely on their default judgment against Gibson to prove that an autodialer was used to send the text messages they received. But a default judgment against one party does not establish any sort of issue preclusion against another party who appears in an action ready to defend it. Issue preclusion only applies if the issue is "the same as that involved in the prior litigation," the issue was "actually litigated," the determination of that issue was "essential to the final judgment," and the party being precluded was "fully represented in the prior action." *La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.*, 914 F.2d 900, 906 (7th Cir. 1990) (citation and internal quotation marks omitted). These elements are plainly not met here. Moreover, the entry of default against Gibson did not prevent Plaintiffs from obtaining discovery from him as necessary to prove its claims against Lexington. *See Blazek v. Capital Recovery Assocs., Inc.*, 222 F.R.D. 360, 361 (E.D. Wis. 2004) (treating defaulting defendant as a non-party subject to discovery rules fora non-parties, such as Federal Rule of Civil Procedure 45).

Having granted summary judgment on Plaintiffs' only federal claim, the Court must confirm its subject-matter jurisdiction over the remaining state-law claims. The Court exercised jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a), which provides for supplemental jurisdiction over "all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). But generally, "when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008) (citation and internal quotation marks omitted). Nonetheless, it is appropriate for the Court to retain pendent jurisdiction where "the statute of limitations has run," "substantial judicial resources have already been committed," or "it is absolutely clear how the pendent claims can be decided." *Id.* Here, substantial resources have been expended and the proper resolution of the remaining claims is absolutely clear. Thus, the Court will retain supplemental jurisdiction over Plaintiffs' state-law claims.

### 1. Illinois Automatic Telephone Dialers Act

To prevail on their IATDA claim, Plaintiffs must prove that Lexington made, or caused to be made, the text messages at issue in this case. 815 ILCS 305/30(a). Further, Plaintiffs must establish "(1) that a call was made; (2) using an automatic telephone dialing system or artificial or prerecorded voice; (3) the number called was assigned to cellular telephone service; and (4) the call was not made with the prior express consent of the recipient." *Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 861 F. Supp. 2d 898, 904–05 (N.D. Ill. 2012); *see also* 815 ILCS 305/30(a)–(b). As discussed above, Plaintiffs have not offered any meaningful evidence that Lexington sent or

caused another to send the text messages or that the text messages were sent via autodialer. Thus, the Court grants summary judgment to Lexington on Count III.

### 2. Illinois Consumer Fraud and Deceptive Business Practices Act

Plaintiffs assert two claims under the ICFA. First, they claim that Lexington engaged in "unfair or deceptive acts or practices" in the conduct of trade or commerce with the intent that Plaintiffs rely on their deception. 815 ILCS 505/2. Second, they claim that Lexington violated a section of the ICFA that requires any person who promotes or advertises a business or product by offering free prizes, gifts, or gratuities to include all material terms and conditions at the outset of the offer, "so as to leave no reasonable probability that the offering might be misunderstood." 815 ILCS 505/2P. The elements of an ICFA claim include: "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Brodsky v. HumanaDental Ins. Co.*, No. 10 C 3233, 2014 WL 2780089, at *11 (N.D. Ill. June 12, 2014) (citing *Aliano v. Ferriss,* 988 N.E.2d 168, 176 (Ill. App. Ct. 2013)). Here, without meaningful evidence that Lexington was responsible for the text messages or the alleged scheme, Plaintiffs cannot establish that Lexington committed a deceptive act or practice or intended reliance on the deception. The Court accordingly grants summary judgment to Lexington on Counts II and IV as well.

### 3. Uniform Deceptive Trade Practices Act

Finally, the Court considers Plaintiffs' claim under the UDTPA. Plaintiffs contend that Lexington violated the UDTPA's prohibition against deceptive trade practices. 815 ILCS 510/2(a). To prevail on this claim, Plaintiffs must prove three elements: "(1) a deceptive act or practice; (2) intent on the defendant's part that the plaintiff rely on the deception; and (3) that the

deception occurred in the course of conduct involving trade or commerce." *Lynch Ford, Inc. v. Ford Motor Co.*, 957 F. Supp. 142, 147 (N.D. Ill. 1997) (citing *Siegel v. Levy Org. Dev. Co., Inc.*, 607 N.E.2d 194, 198 (Ill. 1992)). Again, without some evidence tying Lexington to the text messages or the scheme, Plaintiffs cannot establish that Lexington intended for them to rely on the deception. The Court grants summary judgment to Lexington on Count V.[6]

**CONCLUSION**

Accordingly, for the foregoing reasons, the Court denies Plaintiffs' motion to amend or correct the complaint (Dkt. No. 92) and grants Defendant Lexington's motion for summary judgment (Dkt. No. 45). The Clerk is directed to enter final judgment in favor of Defendant John C. Heath Attorney at Law, PLLC d/b/a Lexington Law Firm pursuant to Federal Rule of Civil Procedure 54(b). As all claims have now been decided, this case will be closed.

ENTERED:

Dated:  March 30, 2021

Andrea R. Wood
United States District Judge

---

[6] While Plaintiffs also challenged other elements of the state-law claims (such as actual damages) the Court does not reach those elements because Plaintiffs have not established a genuine issue of material fact regarding Lexington's responsibility for the messages or the scheme.